## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | |
|---|---|
| **FALL LINE PATENTS, LLC,** | |
| **Plaintiff,** | **CIVIL ACTION NO. 6:18-cv-411** |
| **v.** | **JURY TRIAL DEMANDED** |
| **STARBUCKS CORPORATION,** | |
| **Defendant.** | |
| **FALL LINE PATENTS, LLC,** | |
| **Plaintiff,** | |
| **v.** | **CIVIL ACTION NO. 6:18-cv-412** |
| **MCDONALD'S CORPORATION and MCDONALD'S USA, LLC,** | **JURY TRIAL DEMANDED** |
| **Defendants.** | |

## DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) FOR LACK OF PATENT ELIGIBLE SUBJECT MATTER

# TABLE OF CONTENTS

I.      SUMMARY OF THE ARGUMENT ................................................................. 1

II.     BACKGROUND ........................................................................................... 2

        A.      The '748 Patent .......................................................................... 2

        B.      The Claims of the '748 Patent's Parent Have Been Construed ............................ 5

III.    LEGAL STANDARDS ................................................................................. 6

        A.      Dismissal On The Pleadings Under Rule 12(b)(6) ............................... 6

        B.      Patent Eligibility Under 35 U.S.C. § 101 ............................................ 6

IV.     ARGUMENT ................................................................................................ 8

        A.      *Alice* Step One: The '748 Patent Claims Are Directed To The Abstract Idea Of
                Sending A Questionnaire, Filling It Out, And Sending It Back ........................... 8

                1.      The Claims Are Indistinguishable From Other Data Collection Claims
                        That The Federal Circuit Found Abstract And Ineligible ........................ 10

                2.      The Patent's Purported Improvements Do Not Save The Claims ........... 12

        B.      *Alice* Step Two: The '748 Patent Claims Add Nothing Inventive ....................... 14

                1.      Claim 1 Adds Nothing Inventive ................................................. 14

                        a)      "Tokenizing" Is Not Inventive .................................... 15

                        b)      Using Generic "GPS" Technology Is Not Inventive .................. 17

                2.      The Other Claims Add Nothing Inventive ............................... 18

                3.      The Combination Of Claim Elements Adds Nothing Inventive .............. 21

        C.      There Is No Reason To Wait For Claim Construction ......................... 23

V.      CONCLUSION ................................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
   882 F.3d 1121 (Fed. Cir. 2018)....................................................................................22

*Affinity Labs of Texas, LLC v. Amazon.com*,
   838 F.3d 1266 (Fed. Cir. 2016)...............................................................11, 15, 19, 20

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*,
   838 F.3d 1253 (Fed. Cir. 2016)...............................................................................9, 21

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   134 S. Ct. 2347 (2014) ....................................................................................... *passim*

*Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*,
   841 F.3d 1288 (Fed. Cir. 2016)....................................................................................23

*Apple, Inc. v. Ameranth, Inc.*,
   842 F.3d 1229 (Fed. Cir. 2016)......................................................................................9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................................6

*Automated Tracking Solutions, LLC v. Coca-Cola Co.*,
   723 F. App'x 989 (Fed. Cir. 2018) ...............................................................................6

*Bascom Global Internet Services, Inc. v. AT&T Mobility LLC*,
   827 F.3d 1341 (Fed. Cir. 2016)...............................................................................21, 23

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................................6

*Berkheimer v. HP Inc.*,
   881 F.3d 1360 (Fed. Cir. 2018)...............................................................................13, 17

*Bilski v. Kappos*,
   561 U.S. 593 (2010)....................................................................................................7, 10

*Callwave Communications, LLC v. AT&T Mobility, LCC*,
   207 F. Supp. 3d 405 (D. Del. 2016) ............................................................................18

*Certusview Techs., LLC v. S&N Locating Servs., LLC*,
   No. 2:13-cv-346, 2016 WL 4251579 (E.D. Va. Aug. 10, 2016), *aff'd*, 695 F.
   App'x 574 (Fed. Cir. 2017)..........................................................................................18

*Concaten, Inc. v. Ameritrak Fleet Solutions, LLC*,
    131 F. Supp. 3d 1166 (D. Colo. 2015), *aff'd*, 669 F. App'x 571 (Fed. Cir.
    2016) ..................................................................................................................18

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
    776 F.3d 1343 (Fed. Cir. 2014)................................................................. *passim*

*Credit Acceptance Corp. v. Westlake Services*,
    859 F.3d 1044 (Fed. Cir. 2017)............................................................................22

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014)............................................................................23

*Electric Power Group, LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016)................................................................. *passim*

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016)............................................................................12

*FairWarning IP, LLC v. Iatric Systems, Inc.*,
    839 F.3d 1089 (Fed. Cir. 2016)............................................................................23

*Finjan, Inc. v. Blue Coat Systems, Inc.*,
    879 F.3d 1299 (Fed. Cir. 2018)............................................................................12

*Gentilello v. Rege*,
    627 F.3d 540 (5th Cir. 2010) ................................................................................6

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
    792 F.3d 1363 (Fed. Cir. 2015)...............................................................10, 15, 22

*Intellectual Ventures I LLC v. Capital One Financial Corp.*,
    850 F.3d 1332 (Fed. Cir. 2017)................................................................. *passim*

*Intellectual Ventures I LLC v. Erie Indemnity Co.*,
    850 F.3d 1315 (Fed. Cir. 2017)................................................................. *passim*

*Intellectual Ventures I LLC v. Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir. 2016)............................................................................13

*Intellectual Ventures I LLC v. T-Mobile USA, Inc.*,
    No. 13-1632-LPS, 2017 WL 3706495 (D. Del. Aug. 23, 2017)............................13

*Internet Patents Corp. v. Active Network, Inc.*,
    790 F.3d 1343 (Fed. Cir. 2015)...............................................................7, 9, 11, 17

*Interval Licensing LLC v. AOL, Inc.*,
    896 F.3d 1335 (Fed Cir. 2018)..................................................................6, 11, 12

*Maxon, LLC v. Funai Corp., Inc.*,
    726 F. App'x 797 (Fed. Cir. 2018) ...................................................................6

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
    837 F.3d 1299 (Fed. Cir. 2016).....................................................................12

*Network Apparel Grp., LP v. Airwave Networks Inc.*,
    154 F. Supp. 3d 467, 494 (W.D. Tex. 2015), *report and recommendation
    adopted by* No. 6:15-cv-00134, 2016 WL 4718428 (W.D. Tex. March 30,
    2016) ...............................................................................................................22

*Novo Transforma Techs., LLC v. Sprint Spectrum L.P.*,
    No. 14-612-RGA, 2015 WL 5156526 (D. Del. Sept. 2, 2015), *aff'd,* 669 F.
    App'x 555 (Fed. Cir. 2016)............................................................................19

*OIP Techs., Inc. v. Amazon.com*,
    788 F.3d 1359 (Fed. Cir. 2015).........................................................................8

*Pres. Wellness Techs. LLC v. Allscripts Healthcare Solutions*,
    No. 2:15-CV-1559, 2016 WL 2742379 (E.D. Tex. May 9, 2016) .........................23

*Prism Technologies LLC v. T-Mobile USA, Inc.*,
    696 F. App'x 1014 (Fed. Cir. 2017) ...............................................................20

*RecogniCorp, LLC v. Nintendo Co.*,
    855 F.3d 1322 (Fed. Cir. 2017)............................................................... *passim*

*Rothschild Location Technologies LLC v. Geotab USA, Inc*.,
    No. 6:15-cv-682-RWS-JDL, 2016 WL 2847975 (E.D. Tex. May 16, 2016),
    *reconsideration denied,* 2016 WL 7049401 (Dec. 5, 2016), *appeal dismissed,*
    No. 17-1469 (Fed. Cir. Jan. 27, 2017) ......................................................6, 18

*Rothschild Location Technologies LLC v. Geotab USA, Inc.*,
    No. 6:15-cv-682-RWS, 2016 WL 3584195 (E.D. Tex. Jan. 4, 2016) ....................17

*SAP America, Inc. v. Investpic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018)....................................................................6, 22

*Smart Systems Innovations, LLC v. Chicago Transit Authority*,
    873 F.3d 1364 (Fed. Cir. 2017)....................................................................6, 17

*In re TLI Communications LLC Patent Litigation*,
    823 F.3d 607 (Fed. Cir. 2016)...........................................................11, 12, 15

*Tranxition, Inc. v. Lenovo (United States) Inc.*,
    664 F. App'x 968 (Fed. Cir. 2016) ...............................................................19

*TriPlay, Inc. v. WhatsApp Inc.*,
  No. 13-1703-LPS-CJB, 2018 WL 1479027 (D. Del. Mar. 27, 2018),
  *reconsideration denied*, 2018 WL 3545500 (D. Del. July 24, 2018) ......................................13

*Two-Way Media Ltd. v. Comcast Cable Commc'ns*,
  874 F.3d 1329 (Fed. Cir. 2017)................................................................................8, 21

*Ultramercial, Inc. v. Hulu, LLC*,
  772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring)....................................6, 7, 23

*Visual Memory LLC v. Nvidia Corp.*,
  867 F.3d 1253 (Fed. Cir. 2017)..................................................................................12

*Voter Verified, Inc. v. Election Systems & Software LLC*,
  887 F.3d 1376 (Fed. Cir. 2018)....................................................................................6

*Wireless Media Innovations, LLC v. Maher Terminals, LLC*,
  100 F. Supp. 3d 405 (D.N.J. April 20, 2015), *aff'd*, 636 F. App'x 1014 (Fed.
  Cir. 2016) ..............................................................................................................18, 23

## Statutes

35 U.S.C. § 101 .................................................................................................. *passim*

## Other Authorities

Fed. R. Civ. P. 12(b)(6).............................................................................................1, 6

The undersigned Defendants jointly move to dismiss the Complaint of Plaintiff Fall Line Patents, LLC under Rule 12(b)(6) because U.S. Patent No. 9,454,748 is invalid for lack of patent eligible subject matter under 35 U.S.C. § 101.[1]

## I.    SUMMARY OF THE ARGUMENT

The claims of the '748 patent are directed to an abstract concept without reciting anything inventive and thus do not pass muster under the familiar two-step test for patent eligibility set forth in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014).  As a result, this infringement action should be dismissed.

At *Alice* step one, the claims' "focus" or "character as a whole" is directed to the abstract idea of sending a questionnaire, filling it out, and sending it back.  *See Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016).  For example, claim 1 (which is representative and is the only claim identified in the complaint) discloses a method for creating a questionnaire tailored to a specific location, converting it to computer code ("tokenizing" it), transmitting it, completing it (including GPS information), and returning it.  As the patent itself admits (and depicts), however, that is the same type of thing humans have long done using "paper forms" to "gather[] data from the field"—on "sales calls," from a "stockroom," and so on. '748 patent at 1:29-30, 8:18-24, 10:14-24, Fig. 4.  Claim 1 does not improve the functionality of computers or GPS systems, but instead uses generic computer components as tools to automate an abstract process.  Claim 1, therefore, falls into the "familiar class of claims" directed to the patent-ineligible abstract concepts of "collecting information, analyzing it, and displaying certain results of the collection and analysis."  *See Elec. Power Grp.*, 830 F.3d at 1353.  Indeed, it is indistinguishable from—or far more abstract than—numerous claims that the Federal Circuit found lacking under *Alice*.

---

[1] This Motion is identical to the motion to dismiss that defendants in Case Nos. 6:18-cv-407, -408, -409, -413, and -415 filed on October 12, 2018.

At *Alice* step two, the claim elements, individually or in combination, provide no inventive concept.  Claim 1 does not disclose an improvement to a particular computer or GPS technology, but rather invokes basic computing components as a tool to carry out the abstract (indeed, manual) process.  For example, it requires "tokenizing" the questionnaire and obtaining location information using "GPS."  But reciting well-understood, routine, conventional industry activity—such as tokenizing and using GPS—is insufficient to confer eligibility under § 101.  Thus, because claim 1 fails under the *Alice* test, it is invalid.  And because the other claims are substantially similar and linked to the same abstract idea, they are also invalid.

Defendants therefore respectfully request that the Court grant this motion and dismiss Plaintiff's complaint for lack of patent-eligible subject matter under § 101.

## II.     BACKGROUND

### A.     The '748 Patent

The '748 patent is entitled "System and Method for Data Management" and "relates to a system of computing devices for the collection and management of information."  ('748 patent, 1:17-18) (attached as Exhibit A).  It seeks to automate and accelerate the longstanding manual process of using paper forms to collect information by using an electronic questionnaire.

As the patent explains, businesses have long used paper forms as questionnaires to collect information from, for example, "a stockroom for a manufacturing facility, a production floor, a delivery site for a product, etc."  (*Id.* at 1:27-30, 8:18-24, 10:14-27.)  These "had to be created, printed, and delivered to a user of the form" and then, "[a]rmed with the form, the user had to complete the assigned task and complete the form reflecting observations made during the task."  (*Id.* at 10:14-19.)  "A completed form was then typically delivered to yet another person for data entry before the information was finally available to others in the company."  (*Id.* at 10:21-24.)  The patent depicts this longstanding manual process in Figure 4 below:



The purported problem with this prior art approach was that "[i]f the user delayed in filling out the form, these observations were subject to the inaccuracies associated with human memory." (*Id.* at 10:19-21.)  Additionally, there were "errors" associated with "unreadable forms or [as] a result of human error at data entry."  (*Id.* at 10:24-27.)

The '748 patent's solution is to computerize this manual practice using an electronic form: "a form may be entered on-line, the form is automatically sent to the handheld computer of the user, usually within seconds, the user enters data directly at the location of the user's assigned task, eliminating memory errors, and made available to others in the organization in virtually a real time fashion."  (*Id.* at 10:28-34.)  Figure 5 depicts this automation as follows:

*Fig. 5*

- 3 -

The patent discloses no specific programming for the originating computer, the handheld computing device, or the recipient computer.  To the contrary, the specification makes clear that the method can be performed using "any computer(s) (desktops, laptops, handhelds, portables, etc.)" to "capture information" and then to transmit the information back to a "server" (or any "computer").  (*Id*. at 4:54-63, 7:15-22, 7:47-48.)  For example, Figure 3, which provides a "diagram of the inventive system as used for information collection and review," depicts only basic general purpose computing components:



(*Id*. at Fig. 3; 6:60-61.)  The patent also discloses no new or improved GPS receiver or functionality.  The specification references "GPS" only twice in passing, noting that certain information "may be collected automatically rather than entered manually, *e.g*., time and date, position information if the device includes a GPS receiver, etc.," *id*. at 5:42-48; *see id*. at 10:56-58 (similar).

The '748 patent's claims likewise provide no specialized or purportedly innovative hardware or software.  The patent contains 22 method claims, six of which are independent.  Plaintiff's complaint specifically asserts infringement of only claim 1.  (Dkt. 1, ¶ 12 (except in the -409 case where each paragraph cite herein is one number lower).)  Claim 1 is representative:

1. A method for managing data including the steps of:

> (a) creating a questionnaire comprising a series of questions customized for a location;
>
> (b) said questionnaire including at least one question requesting GPS coordinates;
>
> (c) tokenizing said questionnaire, thereby producing a plurality of device indifferent tokens representing said questionnaire;
>
> (d) transmitting said plurality of tokens to a remote computing device;
>
> (e) when said remote computing device is at said location, executing at least a portion of said plurality of tokens representing said questionnaire at within said remote computing device to collect a response from a user;
>
> (f) automatically entering the GPS coordinates into said questionnaire;
>
> (g) transmitting at least a portion of said response from the user to a server in real time via a network; and
>
> (h) storing said response at said server.

In other words, at root, claim 1 discloses a method for using a tokenized questionnaire to collect information (including GPS coordinates) from a remote device at a given location.

## B.    The Claims of the '748 Patent's Parent Have Been Construed

The '748 patent is a continuation of U.S. Patent No. 7,822,816 ("the '816 patent").  In 2011, Plaintiff's predecessor-in-interest (Macrosolve, Inc.) asserted the '816 patent against several defendants.  *See*, *e.g.*, *Macrosolve, Inc. v. Antenna Software, Inc.*, No. 6:11-CV-287 (E.D. Tex.).  In that case, this Court construed several terms of the '816 patent's claims— including terms also found in the '748 patent's claims.  *See* Order at 30-31 (attached as Exhibit B); *see, e.g., id.* at 30 ("tokens" is simply "any non-reducible element of the computer code that is being parsed").  Macrosolve's suits asserting the '816 patent ended in 2014 when all claims were canceled in reexamination and the patent eventually expired due to non-payment of maintenance fees.

## III.    LEGAL STANDARDS

### A.    Dismissal On The Pleadings Under Rule 12(b)(6)

Motions to dismiss under Rule 12(b)(6) should be granted if the complaint lacks a cognizable legal theory.  *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).  The Court accepts well-pleaded facts as true, but does not accept conclusory factual allegations or legal conclusions.  *Id.*

Patent ineligibility under § 101 is a threshold issue that "may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion" as a matter of law, before formal claim construction or fact development, where there are no relevant factual disputes.  *SAP Am. Inc. v. Investpic, LLC,* 898 F.3d 1161, 1166 (Fed. Cir. 2018).[2]  Resolving eligibility on the pleadings minimizes "'expenditure of time and money by the parties and the court,'" guards against "vexatious infringement suits," and "protects the public" from illegitimate patents that improperly monopolize the public store of knowledge.  *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 719 (Fed. Cir. 2014) (Mayer, J., concurring) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007)).

### B.    Patent Eligibility Under 35 U.S.C. § 101

Section 101 of the Patent Act provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of

---

[2] *See also, e.g.*, *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1341 (Fed Cir. 2018); *Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376, 1379 (Fed. Cir. 2018); *Automated Tracking Sols., LLC v. Coca-Cola Co.*, 723 F. App'x 989, 996 (Fed. Cir. 2018); *Maxon, LLC v. Funai Corp., Inc.*, 726 F. App'x 797, 798 (Fed. Cir. 2018); *Smart Sys. Innovations, LLC v. Chicago Transit Auth.*, 873 F.3d 1364, 1366-67 (Fed. Cir. 2017); *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1328 (Fed. Cir. 2017); *Rothschild Location Technologies LLC v. Geotab USA, Inc.*, No. 6:15-cv-682-RWS-JDL, 2016 WL 2847975, at *2-3 (E.D. Tex. May 16, 2016), *reconsideration denied*, 2016 WL 7049401 (E.D. Tex. Dec. 5, 2016).

this title."  35 U.S.C. § 101.  But § 101 "contains an important implicit exception" for abstract ideas, *Alice*, 134 S. Ct. at 2354, which are not patent eligible as a matter of law because they are basic tools in the "storehouse of knowledge" that are "free to all … and reserved exclusively to none," *Bilski v. Kappos*, 561 U.S. 593, 602 (2010).  To determine whether computer-based claims are ineligible, the Supreme Court in *Alice* established its now-familiar two-step framework.  134 S. Ct. at 2355-60.

At step one, the Court determines whether the asserted claims are directed to an abstract idea, such as longstanding commercial or human activities.  *Id.* at 2355.  That is, the Court must determine whether the claims' "focus"—their "character as a whole"—is an abstract idea.  *Elec. Power Grp.*, 830 F.3d at 1353; *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015); *see also Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1328 (Fed. Cir. 2017) ("*IV-Erie*") ("heart" of computer claims was abstract idea); *Ultramercial,* 772 F.3d at 714–15 ("heart" of eleven-step computer claim was abstract idea).  Implementing the idea in a particular "technological environment," using conventional computer technology, does not make the claims "'any less abstract.'"  *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1340 (Fed. Cir. 2017) ("*IV-Capital One II*").  In making this inquiry, courts often consider whether the claims focus on a "'specific implementation of a solution to a problem in the software arts'"—"'a specific means or method' for improving technology"—or instead use a computer "'merely as a tool'" to perform an abstract idea.  *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1326-27 (Fed. Cir. 2017) (citations omitted).

At step two, the Court determines whether the other claim elements, individually or collectively, add "significantly more" to the abstract idea—something "inventive"—that is "sufficient to 'transform' the claimed abstract idea into a patent-eligible application."  *Alice*, 134

S. Ct. at 2357.   Implementing an abstract idea with "well-understood," "routine," or "conventional" activities, limiting the idea to a particular technological environment, or adding mere data-gathering and other insignificant limitations contributes nothing inventive.   *Id*. at 2359; *see also, e.g.*, *OIP Techs., Inc. v. Amazon.com*, 788 F.3d 1359, 1362-63 (Fed. Cir. 2015) ("conventional computer activities or routine data-gathering steps" are insufficient).   Nor can patent claims simply recite "'generic functional language to achieve [the] purported solutions'" without claiming "'how the desired result is achieved.'"   *Two-Way Media Ltd. v. Comcast Cable Commc'ns*, 874 F.3d 1329, 1339 (Fed. Cir. 2017) (citation omitted; emphasis added).   "To save a patent at step two, an inventive concept must be evident in the claims."   *RecogniCorp*, 855 F.3d at 1327.

## IV.   ARGUMENT

The '748 patent claims are invalid under § 101 because they are directed to an abstract idea—sending a questionnaire, filling it out, and sending it back—and add only conventional computer elements, mere data-gathering steps, post-solution activity, and other routine features that do not transform the idea into a patent-eligible application.

### A.   *Alice* Step One: The '748 Patent Claims Are Directed To The Abstract Idea Of Sending A Questionnaire, Filling It Out, And Sending It Back

The '748 patent claims are directed to the abstract idea of sending a questionnaire, filling it out, and sending it back.   For example, independent claim 1 (which is representative and the only claim identified in the complaint) recites that idea as a series of basic method steps— (1) creating a questionnaire for a given location, (2) transmitting it, (3) completing it, and (4) returning it.   The other independent claims (claims 7, 9, 16, 19, and 21) include those as well. Beyond that, the independent claims use only conventional computer technology (such as a "computer," "remote computing device," or "the Internet") and functions (such as "tokenizing"

the questionnaire and automatically inserting "GPS coordinates").  And the dependent claims add more of the same and other insignificant features.  (*See infra* at Section IV(B)(2) (discussing claims 2-22 in more detail).)  Notwithstanding the claims' recitation of generic computer technology, the clear "focus" of the claims—the essential "most important aspect"—is the idea of sending, completing, and returning a questionnaire.  *See, e.g.*, *IV-Erie*, 850 F.3d at 1328; *Internet Patents*, 790 F.3d at 1348.[3]  Thus, the '748 patent is invalid under § 101 because it "merely claims the addition of conventional computer components to well-known business practices." *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1242 (Fed. Cir. 2016) (holding ineligible claims directed to "replac[ing] a server's notepad or mental list with an electronic device programmed to allow menu items to be selected as a customer places an order").

With or without computers, humans have long performed that same type of activity.  As the specification admits (and depicts in Figure 4), it was commonplace to use "paper forms" as questionnaires to collect data in any number of business settings:  a form was created, sent (*e.g.*, via traditional "mail"), received, completed in the field (*e.g.*, on "sales calls"), returned, and entered into a database.  ('748 patent at 10:14-24, Fig. 4; *see also id.* at 1:29-30 ("[W]orkers have traditionally entered the information on paper forms."); *id.* at 8:18-24 (questionnaires can be used to "gather[] data from the field, whether the field is a stockroom for a manufacturing facility, a production floor, [or] a delivery side for a product, etc.").)  That fundamental information-collection concept is a "'basic tool[]'" in the "'storehouse of knowledge'" that is

---

[3] Patent claims are properly found ineligible based on a representative claim where, as with claim 1 here, the other claims are "substantially similar" and directed to the same abstract idea. *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (invalidating 242 claims based on two representative claims).  That is also true if the Plaintiff fails to identify any meaningful differences.  *See, e.g.*, *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1264 n.4 (Fed. Cir. 2016); *Elec. Power Grp.*, 830 F.3d at 1352. But, the claims here are all ineligible even if considered individually.

"'free to all … and reserved exclusively to none.'" *Bilski*, 130 S. Ct. at 3225, 3253 (citations omitted). That the claims now purport to automate and accelerate this abstract (and traditionally manual) concept in a series of functional computerized steps does not make it "any less abstract." *IV-Capital One II*, 850 F.3d at 1340; *see also*, *e.g.*, *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015) ("merely adding computer functionality to increase the speed or efficiency of the process does not confer patent eligibility on an otherwise abstract idea").

> ### 1.    The Claims Are Indistinguishable From Other Data Collection Claims That The Federal Circuit Found Abstract And Ineligible

The '748 patent claims fall squarely within the "familiar class of claims" that the Federal Circuit has repeatedly held are directed to abstract concepts of "collecting information, analyzing it, and displaying certain results of the collection and analysis." *Elec. Power Grp.*, 830 F.3d at 1353. For example, in *IV-Capital One II*, 850 F.3d 1332, the ineligible claims recited an "apparatus for manipulating XML documents" consisting of computer components for (1) organizing XML data components into data objects, (2) identifying primary record types ("PRTs"), (3) mapping the data components to the PRTs, (4) organizing the PRTs to form a management record type ("MRT"), (5) defining a dynamic document for display in a user interface, (6) detecting modifications, and (7) modifying an XML document accordingly. *Id*. at 1339. Despite seemingly intricate computer implementation, the Federal Circuit held that the claims were, at root, directed to the abstract idea of "collecting, displaying, and manipulating data." *Id.* at 1340. Similarly, in *IV-Erie*, the ineligible claims included steps for, among other things, (1) "receiving a request for information," (2) "using an index that includes tags and metafiles to locate the desired information," and (3) "deliver[ing] the [requested] records." 850 F.3d at 1326-27. And, in *Electric Power*, the ineligible claims—which were notably "lengthy

and numerous"—included extensive steps and specific information to "detect[]" and "analyz[e]" the condition of a power grid in real time.  830 F.3d at 1351-52.  But in each case the court found the claims directed to fundamentally abstract data-collection activities.

The Federal Circuit likewise found ineligible numerous other computer claims for requesting, collecting, receiving, and manipulating information, such as ones for (1) "enabling acquisition of a set of content data from a specified information source" and displaying it in a certain manner, *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1339-40 (Fed. Cir. 2018), (2) using a "handheld wireless device" to "request … a streaming delivery" and "retriev[e]" it "from an appropriate network location," *Affinity Labs of Tex., LLC v. Amazon.com*, 838 F.3d 1266, 1268 (Fed. Cir. 2016), (3) generating and displaying an "online application form set" to collect and store information, *Internet Patents*, 790 F.3d at 1345, (4) "customizing information and presenting it to users based on particular characteristics," *IV-Capital One II*, 850 F.3d at 1340, and (5) "encoding" facial feature information as "codes," transmitting the codes, and then "decoding" them to create composite facial images, *RecogniCorp*, 855 F.3d at 1326, among others.  *See also, e.g.*, *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016) (classifying, organizing, and storing digital images); *Content Extraction*, 776 F.3d at 1347 ("data collection, recognition, and storage").

Despite computer implementation, all of these claims' data-manipulation steps were akin to activities "humans have always performed."  *Content Extraction*, 776 F.3d at 1347.  Also, the claims included no "particular manner" of "improving computers"—no details on "*how* to engineer or program" the components—and instead recited "result-based" functional elements and "uses of existing computers as tools in aid of processes focused on 'abstract ideas.'" *Interval Licensing*, 896 F.3d at 1343-45; *also, e.g.*, *Affinity Labs v. Amazon*, 838 F.3d at 1269-70

("The purely functional nature of the claim confirms that it is directed to an abstract idea …."); *Elec. Power Grp.*, 830 F.3d at 1354 (ineligible claims provide no "particular … inventive technology for performing those functions"); *TLI*, 823 F.3d at 612 (ineligible claims "fail[] to provide any technical details for the tangible components, [and] instead predominantly describes the system and methods in purely functional terms").

The same result follows here.  As in those cases, the '748 patent claims focus on commonplace data collection activities—sending, completing, and returning a questionnaire—an abstract concept with ample pre-computer analogues.  And neither the claims nor the specification purports to provide any specific improvement to computer technology—no details on "*how* to engineer or program" the system—just "result-centric" functional steps and insignificant details.  *Interval Licensing*, 896 F.3d at 1345.  Thus, as in those cases, the '748 patent claims are directed to an abstract concept.

For the same reasons, the claimed invention is a far cry from the handful of "specific … improvement in computer capabilities" that the Federal Circuit has found patent eligible. *See Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016) (improved computer database structure); *see also, e.g.*, *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1307-08 (Fed. Cir. 2016) (specific improvement to lip synch animation based on particular "output morph weight set stream" and "transition parameters"); *Visual Memory LLC v. Nvidia Corp.*, 867 F.3d 1253, 1260 (Fed. Cir. 2017) ("new, improved and more efficient memory system."); *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1304-05 (Fed. Cir. 2018) ("specific" improved "'behavior-based' virus scan").

### 2.   The Patent's Purported Improvements Do Not Save The Claims

Plaintiff's complaint asserts that the patent provides three technological advances: (1) solving "compatibility issues" using "device-independent" "tokens" (Compl. ¶¶ 35-36),

- 12 -

(2) addressing the lack of availability, and limited bandwidth of, networks (*id.* ¶ 37), and (3) "using an integral GPS device" (*id.* ¶ 38).  None of those assertions saves the claims.

First, the court rejected the same "compatibility" argument in *IV-Capital One II*—the patentee's contention that its claims "render[] otherwise incompatible documents compatible" by using certain "specific" device-independent "data structures and objects (PRTs and MRTs)"—because "the underlying concept embodied by the limitations merely encompasses the abstract idea itself of organizing … and manipulating data of particular documents."  850 F.3d at 1340-41.  So too here:  "[n]othing in the claims indicate what steps are undertaken to overcome the stated incompatibility problems" and a "token" is a functional label—even more generic than the "specific data structures and objects" that purportedly solved the problem in *IV-Capital One II*.  *Id.* at 1342.  (*See also infra* at Section IV(B)(1)(a) (further discussing conventionality of "tokens").)[4]

Second, the claims do "not describe or require a solution to" particular problems of network availability or bandwidth.  *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1322 (Fed. Cir. 2016) ("*IV-Symantec*"); *see also, e.g.*, *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018) (purported patent-eligible improvements must be "captured in the claims"); *Content Extraction*, 776 F.3d at 1346 ("We focus here on whether the *claims* of the

---

[4] *See also, e.g., IV-Erie*, 850 F.3d at 1331 (claims ineligible despite purporting from provide device-independent access to resources because "neither the specification nor the claims cabin the invention specifically in terms of solving these compatibility issues"); *TriPlay, Inc. v. WhatsApp Inc.*, No. 13-1703-LPS-CJB, 2018 WL 1479027, at *1 (D. Del. Mar. 27, 2018), *reconsideration denied*, 2018 WL 3545500 (D. Del. July 24, 2018) (claims ineligible despite purporting to solve problem of "cross-platform messaging between two devices that do not share compatible media/messaging capabilities"); *Intellectual Ventures I LLC v. T-Mobile USA, Inc.*, No. 13-1632-LPS, 2017 WL 3706495, at *9-10 (D. Del. Aug. 23, 2017) (claims ineligible despite purporting to solve "incompatibility in communication," which "has existed ever since human languages diverged").

asserted patents fall within the excluded category of abstract ideas.") (emphasis added).  And, in any event, the patent nowhere purports to describe any particular technological improvement to network availability or bandwidth.  *See, e.g., RecogniCorp*, 855 F.3d at 1324 (claims ineligible despite using "encoding and decoding" to solve purported "bandwidth" problem).

Third, the patent nowhere purports to improve GPS technology or describe how to create an "integral GPS device"; indeed, the specification only references "GPS" twice in passing. ('748 patent at 5:42-48, 10:56-58; *supra* at Section IV(B)(1)(b).)  At most, the patent's purported advances are to gathering and combining information of a specified content (a questionnaire with GPS information) using conventional GPS technology.  (*See infra* at 17-18 (further discussing conventionality of GPS).)  But that does not make the claims non-abstract: "[t]he advance they purport to make is a process of gathering and [combining] information of a specified content, … and not any particular assertedly inventive technology for performing those functions."  *Elec. Power Grp.*, 830 F.3d at 1354.

At *Alice* step one, the asserted claims are directed to the abstract concept of sending, completing, and returning a questionnaire.

### B.      *Alice* Step Two: The '748 Patent Claims Add Nothing Inventive

At *Alice* step two, the claims add nothing inventive to that abstract idea.  134 S. Ct. at 2359-60.   At most, they recite implementing the idea using admittedly generic computer components and functions, mere data-gathering steps, and other insignificant features, all of which the Supreme Court and Federal Circuit have found insufficient to confer patent eligibility.

#### 1.      Claim 1 Adds Nothing Inventive

Claim 1's computer components (a "remote computing device," a "server," and a "network") and functions ("transmitting," "executing," and "storing" data) are "purely functional and generic" features that add nothing inventive, as the specification admits and as the courts

- 14 -

have repeatedly held.  *See*, *e.g.*, *Alice*, 134 S. Ct. at 2359-60 (ineligible claims recited "data processing system" and "most basic functions of a computer" such as transmitting data); *Affinity Labs v. Amazon*, 838 F.3d at 1267-68 (ineligible claims recited "network based" system for "handheld wireless device" to "execut[e]" instructions for requesting and receiving content remotely); *TLI*, 823 F.3d at 610 ("transmitting" information to a "server" and "storing" it).  Nor do claim 1's requirements for "customiz[ing]" the questionnaire to a particular location or transmitting the data "in real time" provide anything inventive.  *See*, *e.g.*, *Capital One Bank*, 792 F.3d at 1369-70 ("customizing web page content" based on "location of the individual" is non-inventive); *Elec. Power Grp.*, 830 F.3d at 1356 (transmitting information "in real time" is non-inventive).

That leaves only claim 1's requirements for (a) "tokenizing" the questionnaire and (b) obtaining and entering "GPS coordinates."  Those also do not make claim 1 eligible.

### a)       "Tokenizing" Is Not Inventive

Claim 1 requires "tokenizing" the questionnaire to generate "device indifferent tokens representing said questionnaire" and "executing" the tokens to complete the questionnaire.  The tokenizing limitations do not provide an inventive concept.

"Tokenizing" is a routine process:  assigning an identifier (such as a number or symbol) to a computer operation and then "decoding" that identifier when it comes time to perform the operation.  As the specification explains, the system "assigns indices, or tokens, which point to each question or response" and "a list of tokens which point to the questions and responses" is used to execute the questionnaire.  ('748 patent at 8:55-56, 9:8-10.)  That way, for example, "[a]s will be apparent to those skilled in the art, if a question or response is repeated within the questionnaire, only a pointer need be repeated in the program list, not the entire question."  (*Id.* at 9:10-13.)  Similarly, as Plaintiff's predecessor described in *Macrosolve*, in the "tokenizing"

- 15 -

process, "the data (in this case the questionnaire) is converted into atomic (i.e., 'non-reducible') elements that each have a specific meaning to the parser (in this case, the program reading and executing the tokens on the handheld device)."  *Macrosolve/Antenna*, Dkt. No. 433 at 7 (attached as Exhibit G).  Plaintiff provided a real-life example as follows:

> [T]he transmission of an entire phrase such as "Enter your account number" may … be compressed by assigning a code/token to the phrase as a whole.  For example, the code/token "1" may designate this phrase and would be stored in the token tables of both the receiver and transmitter.  The transmission of this entire phrase would then only require the transmission of [the code], significantly reducing the amount of data necessary to be transmitted.  Through the use of the token table on the receiving unit, the original phrase is reconstructed ….

*Id*. at 7-8.  And this Court held that "tokens" simply means "any non-reducible element of the computer code that is being parsed."  (Ex. B at 14.)

The specification and Plaintiff both admit that tokenization is well-known and conventional in computer software.  *See* '748 patent at 2:13-31 (describing "tokens" used in prior art); Compl. ¶ 33 (same).  Indeed, at least four of the acknowledged prior art references cited on the face of the patent (and thus included in the intrinsic record) describe "tokens" or "tokenizing" in the software context.[5]  Also, in the *Macrosolve/Antenna* case, Plaintiff's predecessor admitted that "tokens" is a longstanding "term of art in computer science."  (Ex. G at 7.)

The Federal Circuit has repeatedly held that such assignment and use of identifiers is non-inventive.  In *RecogniCorp*, for example, the court held ineligible claims for "creating a composite image" by "encoding" the facial features using "facial feature element codes" and then decoding those codes to create the composite image.  855 F.3d at 1324.  Indeed, the court recognized that such "encoding and decoding" is "an abstract concept long utilized to transmit

---

[5] *See* U.S. Patents Nos. 6,163,811 at 3:45-53 (filed 1998) (attached as Exhibit C) (tokenization is "commonly used by those skilled in the art"), 6,421,717 at 5:21-26 (filed 2000) (attached as Exhibit D), and 6,212,529 at 11:24-38 (filed 1998) (attached as Exhibit E); U.S. Patent App. Publ. 2003/0198934 ¶¶ 8, 19-20, 27 (filed 2002) (attached as Exhibit F).

information." *Id.* at 1326.  That is precisely what the '748 patent claims purport to do by encoding the questionnaire as tokens and then decoding them to execute the questionnaire.  It is no more availing here. *See also, e.g.*, *Smart Sys. Innovations, LLC v. Chicago Transit Auth.*, 873 F.3d 1364, 1374 (Fed. Cir. 2017) (using "'hash identifier'" and "'identifying token'" is non-inventive); *IV-Erie*, 850 F.3d at 1331 (using "pointers" to retrieve information is non-inventive); *Berkheimer*, 881 F.3d at 1367, 1370 ("parsing" data "from source to object code" is non-inventive).

More recently, Plaintiff has suggested that "token" should be reconstrued to have "a special meaning (i.e., logical, mathematical or branching operation)." ('748 File History, Notice of Allowance (Jul. 7, 2016)); *see Fall Line Patents v. Am. Airlines*, 17-cv-202, Dkt. 22 (E.D. Tex. June 28, 2017).  The patent does not purport to have invented any particular method of performing tokenization or any particular logical, mathematical, or branching operations.  And "[w]ithout an explanation of the 'mechanism' for 'how the result is accomplished,' this purported feature of the invention cannot supply an inventive concept." *IV-Erie*, 850 F.3d at 1331-32 (quoting *Internet Patents*, 790 F.3d at 1348).  Therefore, under any plausible construction, the '748 patent's generic recitation of tokenization adds nothing inventive.

### b)    Using Generic "GPS" Technology Is Not Inventive

The claims' generic recitation of "requesting GPS coordinates" and "automatically entering the GPS coordinates into [the] questionnaire" likewise provides no inventive concept.

For example, in *Rothschild Location Technologies LLC v. Geotab USA, Inc.*, No. 6:15-cv-682-RWS, 2016 WL 3584195 (E.D. Tex. Jan 4, 2016), the Court held that claims using GPS technology to "retrieve an address that is electronically stored in a second GPS device, often in incompatible format, and to have the address entered into the user's GPS device without having to manually enter it" are non-inventive and ineligible under § 101.  The Court reasoned that "[a]

GPS device is a well-known generic computer element insufficient to make otherwise patent-ineligible subject matter patentable." *Id.* at *5, 7.  Numerous other courts have reached the same conclusion.[6]

The same is true here.  As discussed previously, the '748 patent does not purport to provide any improved GPS technology—or to solve any GPS-specific problem—and mentions GPS only twice, both times in passing.  ('748 patent at 5:42-48, 10:55-58; *supra* at 4.)  Likewise, claim 1 does not improve GPS.  Indeed, the basic steps can be performed without GPS at all: location-identifying information responsive to the questionnaire can be obtained manually and input into the mobile device.  Appending such routine technology, with no purportedly inventive way of improving it, does not provide an inventive concept.  *See, e.g.*, *Content Extraction*, 776 F.3d at 1349 (generic optical character recognition technology); *Rothschild Location Techs.*, 2016 WL 3584195, at *7 (generic GPS).

### 2.     The Other Claims Add Nothing Inventive

The Court need not separately analyze the other claims because they are substantially similar to claim 1.  *See*, *e.g*., *Content Extraction*, 776 F.3d at 1348.  But even if analyzed individually, the other claims are still ineligible because they include the same conventional features and functions as claim 1 and any additional limitations are merely pre-solution and post-solution computer implementation or other insignificant activity.

Claim 2 recites "translating" the questionnaire "to a format recognizable by a particular computer program."  ('748 patent at 13:66-14:4.)  The specification does not disclose any

---

[6] *See*, *e.g.*, *Concaten, Inc. v. Ameritrak Fleet Solutions, LLC*, 131 F. Supp. 3d 1166 (D. Colo. 2015), *aff'd*, 669 F. App'x 571 (Fed. Cir. 2016); *Wireless Media Innovations, LLC v. Maher Terminals, LLC*, 100 F. Supp. 3d 405, 413-14 (D.N.J. April 20, 2015), *aff'd*, 636 F. App'x 1014 (Fed. Cir. 2016); *Certusview Techs., LLC v. S&N Locating Servs., LLC*, No. 2:13-cv-346, 2016 WL 4251579, at *8 (E.D. Va. Aug. 10, 2016), *aff'd*, 695 F. App'x 574 (Fed. Cir. 2017); *Callwave Commc'ns, LLC v. AT&T Mobility, LCC*, 207 F. Supp. 3d 405 (D. Del. 2016).

particular method for doing so—and translating or converting to another format is, itself, an abstract idea that cannot provide the inventive concept needed to render the claims patent-eligible. *See, e.g.*, *Tranxition, Inc. v. Lenovo (United States) Inc.*, 664 F. App'x 968, 971 (Fed. Cir. 2016) ("transitioning" data from one format to "a format used on the target computing system" is non-inventive); *Novo Transforma Techs., LLC v. Sprint Spectrum L.P.*, No. 14-612-RGA, 2015 WL 5156526, at *3 (D. Del. Sept. 2, 2015) ("Translators have been used for centuries to facilitate communication between individuals who speak different languages."), *aff'd,* 669 F. App'x 555 (Fed. Cir. 2016).

Claims 3-4 and 7-8 refer to the use of "branch[es]," a "branching path," or "branching logic." ('748 patent at 14:5-28; 14:45-15:4.)  But those are just terms for describing the flow of the questionnaire—providing and selecting successive responses to questions that change depending on the user's responses.  "For example, the questionnaire designer might desire to create a form that asks the user different questions; depending on whether the user was male or female.  In order to do this, the designer would enter the questions ('Are you a man or woman?'); select a response (a 'pop up' list of two entries male and female); select a token (branch if 'male'); assign that token to this question; and, specify an 'end' location for the 'branch' (i.e., the first question asked of 'males')."  (*Id.* at 8:51-9:2.)  That is routine even in paper forms that, based on the answer to one question, direct the user to different subsequent questions (*e.g.*, "If YES, continue with question 3; otherwise skip to question 4.").  As with translation, branching is an abstract concept that can be performed manually by a human with a pen and paper and, lacking any particular implementation mechanism, adds nothing inventive.

Four claims (7, 9, 19, and 21) recite a "handheld computing device" and state that the GPS is "integral" to the device.  Handheld devices are well known.  *See*, *e.g.*, *Affinity Labs v.*

*Amazon*, 838 F.3d at 1268 ("handheld wireless device" not inventive).  Also, as discussed, GPS is purely conventional technology (*supra* at Section IV(B)(1)(b))—and the claims do not provide any explanation or inventive way to make it "integral" to the handheld devices.  (*See id.*)  Claim 12 further requires the user to "authenticate" with the handheld device—but that does not make it eligible.  *See Prism Techs. LLC v. T-Mobile USA, Inc.*, 696 F. App'x 1014, 1016 (Fed. Cir. 2017) ("authenticating identity data" not inventive).  Indeed, two of the references cited in the patent are directed to authentication of mobile devices.  (*See* U.S. Patent No. 5,757,916 (filed in 1995 and entitled "Method and apparatus for authenticating the location of remote users of networked computing systems") (attached as Exhibit H); U.S. Patent Application No. 09/877,663 (filed in 2001 and entitled "Position prediction for authentication of a mobile transmitter") (attached as Exhibit I).)

The claims also recite additional insignificant extra-solution and data-gathering activity such as producing reports of the questionnaire responses (claims 21 and 22) and updating the questionnaire (claim 6), as well as additional details about how to perform routine tokenization (claim 4) and how to design the questionnaire (claim 3).  ('748 patent at 14:5-29.)  Claim 7 recites "at least one loosely networked computer," but "loosely networked" as used in the patent simply means that when a networked computer loses connection, the work in progress is saved and sent when the connection is restored.  (*Id.* at 5:3-13.)  The other claimed limitations—using the same computer or network to send and receive (claims 5, 11, 18, and 22), "assessing a charge" for each response (claim 8), using multiple questions relating to topics like "food quality" (claims 13 and 14), using a "global computer network" (claim 15), determining location using GPS (claim 17), and having multiple users or the same user (claims 19 and 20)—are equally trivial.  The patent does not contend that those features are inventive.

In short, these claims may add a few glosses and details, but all of these claims relate to the same ineligible subject matter—the basic concept of sending questionnaires, filling them out, and sending them back.  None of the claims recite any inventive concepts related to techniques, hardware or software for creating or translating a questionnaire, obtaining or providing GPS coordinates, making tokens, etc.  The claims' inconsequential ancillary steps and features do not make them patent-eligible.  *See Alice*, 134 S. Ct. at 2357-60.

### 3.  The Combination Of Claim Elements Adds Nothing Inventive

Even when each claim's basic functions and components are viewed "as an ordered combination," they do not reveal a "specific implementation" and "specific improvement" in computer technology that might provide an inventive concept.  *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1348-49 (Fed. Cir. 2016).  The claims' arrangement of computer components and processes are merely functional steps for performing the abstract idea with no mechanism for *how* they improve any computer or network functionality.  For example, as discussed, claim 1 recites, in highly generalized and functional terms, steps for creating a questionnaire customized to a location, tokenizing it, transmitting it to a remote computing device, executing it (including automatically entering GPS coordinates), and receiving and storing the response.  That is the hallmark of ineligibility.  *See, e.g*., *IV-Capital One II*, 850 F.3d at 1341 (ineligible claims recited "a series of generic computer 'components' that merely restate their individual functions"); *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1263 (Fed. Cir. 2016) (ineligible claims had "no further specification of a particular technology for getting the defined content displayed"); *Two-Way Media*, 874 F.3d at 1339 (ineligible claims had "'generic functional language to achieve [the] purported solutions'"

without claiming "'*how* the desired result is achieved'").[7]  That is, "the claim language here provides only a result-oriented solution, with insufficient detail for how a computer accomplishes it."  *IV-Capital One II*, 850 F.3d at 1342.  The "law demands more."  *Id.*

Although Plaintiff's complaint asserts three purported technological solutions, those do not save the claims, as discussed above.  *See IV-Capital One II*, 850 F.3d at 1342 ("Nothing in the claims indicate what steps are undertaken to overcome the stated incompatibility problems."); (*supra* at 12-14).  In light of the patent's admissions and lack of any specific technological solution to a technological problem, no allegations in the complaint could (let alone do) "plausibly allege[]" facts showing eligibility.  *See SAP*, 898 F.3d at 1163; *cf. Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).  As the Federal Circuit has repeatedly held, "an inventive concept must be evident *in the claims*."  *RecogniCorp*, 855 F.3d at 1327 (emphasis added).  There is nothing remotely inventive here.

In fact, the basic steps of the '748 patent claims have long been performed in numerous business settings even *without* a computer, as discussed and as the patent admits.  (*Supra* at 9-10.)  That confirms that the claims here are fundamentally directed not to a *technology-specific* problem but instead merely to doing "'more quickly or more accurately'" tasks that could otherwise be performed by humans—which is insufficient under § 101.  *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1057 (Fed. Cir. 2017) (citation omitted); *see also Capital One Bank*, 792 F.3d at 1370 ("[A]dding computer functionality to increase the speed or

---

[7] *See also Network Apparel Grp., LP v. Airwave Networks Inc.*, 154 F. Supp. 3d 467, 494 (W.D. Tex. 2015), *report and recommendation adopted by* No. 6:15-cv-00134, 2016 WL 4718428 (W.D. Tex. March 30, 2016) (claims that recited steps such as "reestablishing the network connection" by "altering the rules for the end user account" for a predetermined time provided no inventive concept because they failed "for lack of specificity" and did not implement the abstract idea in a precisely defined manner), *aff'd*, 680 F. App'x 1003 (Fed. Cir. March 13, 2017).

efficiency of the process does not confer patent eligibility ….").  The claims are, therefore, unlike the handful of particular improvements to *computer technology* that the Federal Circuit has found eligible at *Alice* step two.  *See, e.g.*, *Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288 (Fed. Cir. 2016); *Bascom*, 827 F.3d at 1350; *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256 (Fed. Cir. 2014).

Viewed individually and as an ordered combination, the '748 patent claims provide no inventive concept and thus fail at *Alice* step two.

### C.    There Is No Reason To Wait For Claim Construction

Plaintiff may urge the Court to deny this motion as premature before claim construction. The Court should reject any such argument.

Where the "basic character of the claimed subject matter in dispute is clearly evident to the Court," no further construction of the claims is required.  *Wireless Media Innovations, LLC v. Maher Terminals, LLC*, 100 F. Supp. 3d 405, 413 (D.N.J. 2015), *aff'd*, 636 F. App'x 1014 (Fed. Cir. 2016); *see also, e.g.*, *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1098 (Fed. Cir. 2016) ("Regardless of the resolution of this construction issue, the … patent claims patent-ineligible subject matter"); *Ultramercial*, 772 F.3d at 719 ("No formal claim construction was required because the asserted claims disclosed no more than an abstract idea garnished with accessories and there was no reasonable construction that would bring them within patentable subject matter.") (internal quotes and brackets omitted); *Content Extraction*, 776 F.3d at 1349; *Pres. Wellness Techs. LLC v. Allscripts Healthcare Solutions*, No. 2:15-CV-1559, 2016 WL 2742379 (E.D. Tex. May 9, 2016).

As discussed, the '748 patent claims are drawn to the abstract idea of collecting and transmitting a questionnaire, and construction of any of the claim terms would not change the "basic character of the claimed subject matter" or the § 101 analysis.  In fact, this Court already

construed several of the claim terms—such as "questionnaire," "tokens," and "tokenizing said questionnaire"—in the *Macrosolve/Antenna* case addressing the parent of the present patent in a suit brought by Plaintiff's predecessor.  (Ex. B at 30-31.)  Those constructions add nothing inventive and only reinforce that the claims here are abstract and ineligible under § 101.  That is true even if Plaintiff seeks (as it did in a parallel case) to reconstrue the term "token" with "a special meaning (i.e., logical, mathematical or branching operation)."  *Fall Line Patents v. Am. Airlines*, 17-cv-202, Dkt. 22; (*see supra* at 17).  And the remainder of the claims' terms (*e.g.*, "handheld computing device," "computer," "establishing communications") are well-known in the art.  Additional construction of these terms will not alter the Court's § 101 analysis, and thus there is no reason why the Court should delay in holding the claims ineligible under § 101.

## V.    CONCLUSION

For the foregoing reasons, Defendants respectfully ask the Court grant this motion to dismiss with prejudice for lack of patent eligible subject matter under § 101.

Respectfully submitted,

Date:  October 15, 2018

By: */s/ Tara D. Elliott*
    Melissa Richards Smith
    Texas Bar No. 24001351
    melissa@gillamsmithlaw.com
    GILLAM & SMITH, L.L.P
    102 N. College, Suite 800
    Tyler, Texas 75702
    Telephone:(903) 934-8450
    Facsimile: (903) 934-9257

    Tara D. Elliott (lead attorney)
    (*pro hac vice pending*)
    tara.elliott@lw.com
    LATHAM & WATKINS LLP
    555 Eleventh Street, N.W., Suite 1000
    Washington, D.C. 20004
    Telephone:  (202) 637-2200
    Facsimile:  (202) 637-2201

Lisa K. Nguyen
lisa.nguyen@lw.com
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
Telephone:  (650) 328-4600
Facsimile:   (650) 463-2600

David F. Kowalski
(*pro hac vice pending*)
david.kowalski@lw.com
LATHAM & WATKINS LLP
12670 High Bluff Drive
San Diego, CA 92130
Telephone:  (858) 523-5400
Facsimile:   (858) 523-5450

*Counsel for Defendant*
*Starbucks Corporation*


/s/ Neil J. McNabnay
Neil J. McNabnay
mcnabnay@fr.com
Texas Bar No. 24002583
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
Tel: (214) 747-5070
Fax: (214) 747-2091

*Counsel for Defendants*
*McDonald's Corporation and*
*McDonald's USA LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 15, 2018, the foregoing document was served upon all counsel of record via the Court's CM/ECF electronic filing system in accordance with the Federal Rules of Civil Procedure.

*/s/ Melissa Richards Smith*
Melissa Richards Smith